Good morning. May it please the Court. My name is Josh Chattin-Brown, Pro Bono Counsel on behalf of the Petitioner, Mark Antoine Joseph. I'd like to reserve two minutes for rebuttal. Counsel, because of the conditions in Haiti, I think your client is eligible for this 18-month cessation. Is he going to apply for that? Yes, Your Honor. We will assist the Petitioner in applying for temporary protective status, TPS, and that is a temporary form of relief. And here, today, we are focusing on his permanent form of relief in the form of asylum. Your Honors, there are three main issues in this case that I'd like to focus on. What are you going to do after that? Excuse me, Your Honor? I thought you said you're going to apply for it and then after. He hopes to win this appeal. Yes. Oh. That's precisely correct. Well, speak up so I can hear you. Yes, I apologize. I will speak up. Your Honors, there are three main issues in this case that I would like to focus on today. First, whether an immigration judge's bond memorandum should be excluded from evidence in an applicant's removal proceedings. Second, whether this bond hearing memorandum is reliable evidence – excuse me, is unreliable evidence when the bond hearing proceedings were not recorded, no transcript exists, and the memorandum was based on the immigration judge's brief handwritten notes from the bond hearing. And third, whether the Board of Immigration Appeals erred in denying petitioner's motion to remand based on new corroborating evidence and materials to the case. So going now to the first issue. The bond hearing memorandum in this case should never have been admitted into evidence. The immigration judge's adverse credibility determination was due primarily to discrepancies between the bond hearing memorandum and all of the other consistent testimony and evidence in the case. Counsel, on this business about the discrepancies, is it in terms of omission from telling certain things at the bond hearing, or were there actual discrepancies in what he testified to at the bond hearing and at the removal hearing? Yes, Your Honor. There were both – there was one discrepancy that the immigration judge found, and that was the political party of Dario, the individual who persecuted the petitioner. However, there were also omissions that the judge noted. And the first issue is the – well, the excludability of this bond hearing memorandum addresses both of those components, both the discrepancy and the omission. Despite recognizing that bond hearings are distinct and separate from removal proceedings, despite having concerns about how to appropriately enter this bond hearing memorandum into evidence, and despite an objection from counsel, the immigration, nonetheless, correspondent, admitted this bond hearing memorandum into evidence. I have a question about the regulation that pertains to the separateness of the bond hearing, HCFR 1003.19d. And it's worded to me in a very curious way. It says, consideration by the immigration judge of an application or request of a respondent regarding custody or bond shall be separate and apart from and shall form no part of any deportation or removal hearing or proceeding. It's unclear to me whether that means that the IJ isn't to think about whether somebody sought custody or bond or whether the content of the hearing isn't admissible, which is your argument. But just, have there been any other cases or are there any definitive interpretations of this regulation that would help me understand what its point is? Your Honor, there have been no other definitive cases on this point. However, the language of this regulation is extremely clear. It states that it shall form no part of. Well, the application shall form no part of, and that's different than the notes of the hearing, it seems to me. One could read it that way. That is, one way to read this is that the fact of having applied isn't relevant. And that seems utterly clear from this. What is not clear to me is what beyond the fact of applying is not allowed to form a part of the removal hearing. The intent of this regulation was to separate these two proceedings entirely so that the focus of the bonds hearing is only issues of bonds. And the removal proceedings are entirely separate and apart. And, therefore, the one other fact that I think is relevant in this case is that the bonds hearings are not recorded. And the purpose of that is consistent with this regulation separating the two proceedings because it's the intent of the drafters to ensure that these are two entirely separate hearings. And if you had to consider someone's application and the contents of that application and the fact that I'm sure the application is signed against unrecorded testimony at the bond application hearing, and notes that are made, you'd think that the application would be more reliable than unrecorded notes. Exactly, Your Honor. And that actually leads me to my second point, which is, even assuming arguendo that this evidence, the bond hearing memorandum is, in fact, admissible evidence, that this memorandum is not reliable. And in this case, as you mentioned, the bonds hearing was not recorded, no transcript exists, and the bond hearing memorandum is based on these notes which were prepared during the bonds hearing. Counsel, you said that there was no case authority. What I have found is one in bank hearing by the BIA, the name of the case is this Dengie case. And in that case, they indicated that you could consider the testimony from one hearing over to the other. And in the Seventh Circuit, there was a case which that's the Forrest-Leon case where the court said, well, it was okay to have the same judge for both the bond and the removal hearing as long as the information from the bond hearing was not considered. So we have kind of these two. But anyway, that's all the authority that I have found that seemed to be relevant. Anything else that you have? Your Honor, I was we were unable to find any additional cases on point with regard to this issue. The you want to save some time for rebuttal. Yes, Your Honor. Okay. May I provide a brief conclusion? Or should I? Okay. You have two minutes. Okay. Yes, Your Honor. Thank you. It's your time. Thank you very much. Good morning. May it please the Court. I'm Melody Eaton for the Respondent, the U.S. Attorney General. This petition for review should be denied because substantial evidence supports the finding that the Petitioner was not credible and that he failed to proffer sufficient corroborating evidence. Further, the Board properly denied Petitioner's motion to remand because the proffered evidence was either previously available or not material. This petition. Well, the I.J. also wanted corroborative evidence. That was an error under pre-Real ID Act case law, wasn't it? With regard to the corroborating evidence, Your Honor, it is a the I.J. is allowed to ask for, reasonably allowed to request corroborating evidence if he finds that the Petitioner is not credible. But in finding the Petitioner not credible, he relied on the information from the bond hearing. Is that right? Well, yes, Your Honor. He relied on information, the contradictions, several contradictions in the information from the bond hearing and on another, two other grounds. Tell me exactly what the contradictions were. Sure. There were, at the bond hearing, the alleged persecutor was pro-Aristeid, and at the merits hearing, he became part of an anti-Aristeid faction. At the bond hearing, they had a fight about the band, and at the merits hearing, it became a ---- I didn't hear that. They had an argument about the band. And at the merits hearing, it became part of, about politics. At the bond hearing, the band only performed once a year. And now, at the merits hearing, it was, he performed many, many Aristeid functions. I think at the record at 263, 280, and 295, he had indicated at some point that it was five, five different functions. Actually, those things are quite irrelevant to the bond hearing. Isn't that accurate? At the bond hearing, you're supposed to know whether he's a flight risk, whether he's a danger to society, those types of things. And he wasn't represented by counsel at that time. And so the issue really wasn't, before the bond hearing, it wasn't whether he had a good asylum claim or not. It was completely irrelevant. And so it's difficult for me to think that that should have anything to do with his ultimate removal hearing. I ---- Yes, Your Honor. And he was not represented. However, he made a prior inconsistent statement, which was brought in for impeachment purposes. At the outset of the hearing, the immigration judge stated at the bond hearing that he was not present. And the fact that Petitioner had shared was at odds with his claim. He was put on notice, and the I.J. specifically pointed out the discrepancy that his persecutor, that he had claimed his persecutor was pro aristide. And something else that bothers me, we don't know what the question was that was asked that elicited the answer. That's really ---- That is correct. I mean, the I.J. just scribbled some notes. Yes, that were ---- I don't even rely on my own notes. Well, there is a presumption ---- I go back and read them. I have trouble figuring them out. There is a presumption that public officials perform their duties without motive or an interest, and that they are doing so to submit a fair and accurate report. This bond memorandum would have been an official part of a bond hearing record had there been an appeal. What is your understanding of the meaning of the regulation that I was discussing with opposing counsel? And on what do you base that interpretation? Well, from reading the plain language of the statute, Your Honor, the government submits a regulation. It's a regulation. We're looking at rather than the statute? I'm sorry? Are we looking at the regulations or the statute? The regulations. Okay. The regulations. And 1003.19d is the part that I'm concerned with and what it means. Oh, yes. From the plain language of the regulations. Forgive me. Forgive me. I misspoke. Yes. From the plain language, it deals with only the application and request for bond and does not refer to evidence presented. Petitioner can't build a firewall around a prior inconsistent statement or evidence of evidence that he'd submitted at the bond hearing. The I.J. didn't hide the ball from him, clearly pointed out what the discrepancy was, and at that point, he was impeached and didn't rehabilitate. I just want you to stick to the interpretation of the regulations. And the regulation says this is Part D of 1003.19, and it says that it shall form no part of any deportation or removal hearing or proceeding. Now, how should I read that? From what I understand in the board. It does not allow the use of bond testimony. It does not say that. No. I don't see that. The purpose of the regulation is that there should be. Well, that's in my notes. Oh. I'm sorry. With the government submits that the purpose of the regulation is that there be separate hearings, that the immigration judge should not have the hearing simultaneously. And that's the purpose of the regulation. Well, but what the wording here seems to go farther than that. It shall form no part. Yes. And that deals with just the application and request for bond, not evidence presented, not prior inconsistent statements, and not evidence that was shown. The regulation at 1248 CFR 1240.7 says that the immigration judge may receive into evidence any oral or written statement relevant to any issue in the case made by the Petitioner or any person during any investigation, examination, hearing or trial. If you even harmonize those two regulations, he can't build a firewall around this prior inconsistent statement that he made. Now, Judge Fletcher earlier referred to an interpretation of these, at least the 1003 regulation by the BIA. Are you familiar with that? And if so, what is the BIA's interpretation? From what I read, and I did not read the case that Judge Fletcher had mentioned, however, from what I read about the board's practice manual, is that there is just that there should be two separate proceedings. This Court has also held it was that evidence that was used at a bond hearing, it was an unpublished case, Your Honor, and it was in 2005, but they had used evidence at a bond hearing that was the basis of an adverse credibility finding. It was an affidavit that was submitted that conflicted with the Petitioner's testimony at his merits hearing. And that was not the only ground for adverse credibility. The substantial evidence supports this finding that the Petitioner isn't credible because he also lacked back knowledge about the politics and political situation with Aristide's party. The Petitioner categorized himself as a man who held 20 to 25 meetings with 200-plus people each time at his home, that he was known throughout the entire country and renowned, and this is how he categorized himself, yet he was unfamiliar that with Aristide's accusation of corruption, he was unfamiliar with the fact that vigilantes were attacking demonstrators. He was just unaware, and I can cite the record at 289, 305, and 306, and he was unaware of all the killing and violence that these vigilantes were doing in his native country, which Aristide gave the authority to act outside the law. Now, he was writing songs praising Aristide, isn't that right? That's what he claims, yes, Your Honor. Well, I think that's not disputed. Yes. I think that was part of the evidence. Still, if he was that heavily involved, he said he was involved for four years as part of his administration, and that recognizable and that engaged and active, 20 to 25, he attended all the general meetings held in his region. He would know these basic facts about the ousted leader and what was going on with the political situation in his home country at the time. Well, you know, a lot of people in this country don't know what's going on. You know, people are busy with NASCAR and Super Bowl and trying to find food for their family and all the rest of it, so a lot of folks don't pay attention to things like that because they don't have interest in it or leisure time. You know, turning back to the practice manual, Section Sub 3 says that bond hearings are generally not recorded, and then the next part says the immigration judge creates a record which is kept separate from the records of the proceedings for other immigration proceedings involving the alien. So it's hard for me to think that notes taken by the I.J. can be admissible at all in the proceeding for removability. And it seems to me that just generally they're separate, plus the fact, as counsel noted, that they're not really reliable because we don't know what the questions were, we don't know what the answers were, we don't know the context. The judge may be perfectly honorable in making notes that serve the judge's purposes, but are hardly equal to evidence in the other case. Yes, Your Honor. I see what you're saying about the practice manual. However, this was a prior inconsistent statement that he made, and it was introduced at the hearing. There should be separate hearings. However, evidence presented at those hearings, the government submits, should not be kept out. And if he, in fact, did make these claims, he was put on notice of them at his hearing. And that the two regulations, the other regulation that I cited, should also be harmonized. The I.J. may receive into evidence any prior inconsistent statement. And this directly contradicts his claim. It goes to the heart of his claim about his alleged persecutor. Further, with result to his limited knowledge, this Court has held under Singh v. Ashcroft at 367 F. 3rd, 1139, that lack of knowledge of politics is a legitimate basis for an adverse credibility finding. So this wasn't the only ground. And under Ninth Circuit precedent in Wang and Farah, only one ground going to the heart of the claim is sufficient. Okay. You've gone over your time, Melody. Okay. I'm sorry. May I close or would you just? Okay. Thank you, Your Honors. Thank you. You're doing pretty good so far. I have a question. Thank you. Thank you, Your Honors. My question is what your to ask you what your response is to the government's argument that one could completely discount or erase the bond memorandum and the prior inconsistent statement from the bond hearing and that there are other legitimate bases given for the adverse credibility finding. What is your response to that argument? Well, Your Honor, Respondent mentioned just a moment ago the his lack of knowledge, Petitioner's lack of knowledge with regard to politics. And Respondent misstates the testimony or, excuse me, misstates the evidence in the record. Petitioner never indicated that he was a high-profile member of the political, of ex-President Bertrand Aristide's political party. He only indicated that he was a organizer of rallies and was prominent as such. Therefore, a musician who is organizing rallies is not necessarily going to know the in-depth political, the specific politics of President Aristide. And, therefore, that his lack of knowledge of the politics is not a valid concern. The, Your Honors, I would also like to briefly mention the third issue that I mentioned at the outset of the argument, which is the Board of Immigration Appeals' denial of Petitioner's motion to remand, because that is something that we have not discussed but is extremely important in this case, because the Board of Immigration Appeals denied the Petitioner's motion to remand on the basis that the evidence was not, excuse me, that the BIA, sorry, excuse me, the BIA erred in denying the motion because the evidence submitted after the hearing was not available beforehand. And the court has recognized in, has recognized that corroborating evidence is often scarce in asylum proceedings. And under Sidhu v. INS, this court held that the failure to corroborate an applicant's testimony can be fatal to his asylum application, but only where an applicant inexplicably fails to present easily available material and non-duplicative corroborating evidence to support his asylum claim. So in this case, this evidence was not, in fact, easily available. He, Petitioner, was from a country, Haiti, that was ravaged by civil and political unrest, and Petitioner had to obtain volunteer Creole translators, which was extremely difficult. I read the record. The I.J. didn't say until the conclusion of this hearing that she thought that she needed a death certificate, and so he had no opportunity to understand really what she wanted. That's exactly correct, Your Honor. On the day of the judge's decision is, at the very end of the decision, is when she mentioned that she would have wanted these two additional documents, and this was additional corroborating evidence for evidence that he had already provided. These two documents were pertaining to his claim that his cousin was murdered. He had already provided photographs of his cousin's destroyed car and of his cousin's dead body. Therefore, this additional corroborating evidence cannot be used as a basis for an adverse credibility finding. Therefore, Your Honors, in sum, the volunteering memo should never have been admitted, and it is unreliable evidence. In the absence of this inconsistency in this memorandum, there is not substantial evidence for the I.J.'s adverse credibility finding. Additionally, the motion to remand, as I just mentioned, should have been granted because the evidence submitted was not available during the proceedings. Therefore, because the evidence compels the conclusion that the I.J.'s adverse credibility determination is erroneous, Petitioner respectfully requests that this Court remand the case to the BIA to grant Mr. Joseph asylum. Thank you. Thank you. In the matter of expense admitted, all counsel in this case, we thank you for good presentations, and you have a good future. And Jessica Siegel and Melody Eaton, I'm glad that you're working for the DOJ in Washington. We know that changes are happening, but they're happening slowly. So when good things start to happen, I see that our immigration laws are humanely decided. So it was a pleasure to have you here. And with that, we'll take a brief recess.
judges: Fletcher B. , Pregerson, Graber